**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ERIN VAN DENBURGH,**

                                        **Plaintiff,**

       **vs.**                                                    **1:24-CV-00989**
                                                                  **(MAD/DJS)**

**STATE OF NEW YORK, et al.,**

                                        **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**OFFICE OF DANIELA NANAU, P.C.**          **DANIELA E. NANAU, ESQ.**
89-03 Rutledge Avenue
Glendale, New York 11385
Attorney for Plaintiff

**NEW YORK STATE ATTORNEY**                **BRITTANY M. HANER, AAG**
**GENERAL - ALBANY**
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       On August 12, 2024, Plaintiff Erin Van Denburgh ("Plaintiff") commenced this action

against Defendants State of New York (the "State" or "State of New York"), New York State

Division of Homeland Security and Emergency Services ("Defendant DHSES" or "DHSES"),

Jackie Bray ("Defendant Bray"), and Rayana Gonzales ("Defendant Gonzales") (collectively,

"Defendants").  *See* Dkt. No. 1.  Plaintiff's second amended complaint, filed January 22, 2025,

asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"),[1] as amended by the Pregnancy Discrimination Act of 1991,[2] the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 ("§ 1983"), and the New York State Human Rights Law ("HRL" or "NYSHRL")[3] and alleges that, while Plaintiff was employed at DHSES, Defendants discriminated and retaliated against Plaintiff on the basis of her gender.  *See* Dkt. No. 17 at ¶ 1.  Now pending before the Court is Defendants' motion for partial dismissal of the second amended complaint.  *See* Dkt. No. 18.  For the reasons that follow, Defendants' motion is granted in part and denied in part.

## II. BACKGROUND

The following factual background is derived from the allegations in Plaintiff's second amended complaint, which are presumed true at this stage.  *See* Dkt. No. 17.  Plaintiff is a woman and was employed at DHSES from December 2017 until her constructive discharge on or about March 16, 2022.  *See id.* at ¶¶ 7, 14.  During the relevant time period, Defendant Bray served as the Commissioner of DHSES and Defendant Gonzales served as the Deputy Commissioner for Disaster Recovery Program at DHSES.  *See id.* at ¶¶ 9-10.  Plaintiff's claims in this action "arise from the discriminatory treatment and retaliation she was subject to during her pregnancy, and after her return from maternity leave, which culminated in her constructive discharge in March 2022."  *Id.* at ¶ 20.

Initially, Plaintiff was hired as "DHSES Program Administrator 2," and, in December 2020 she was promoted to "Program Administrator 3."  *Id.* at ¶¶ 15-17.  Due to Plaintiff's

---

[1]  *See* 42 U.S.C. § 2000e.
[2]  *See* 42 U.S.C. § 2000e(k).
[3]  *See* N.Y. Exec. Law § 296.

December 2020 promotion, she was placed on a one-year probation period. *See id.* at ¶ 17. In August 2020, Defendant Gonzales became Plaintiff's direct supervisor, and, in October 2020, Plaintiff became pregnant. *See id.* at ¶¶ 18-19.

Throughout the relevant time period, employees at DHSES were afforded "flex time" when they worked in excess of seventy-five hours in a single pay period. *See id.* at ¶¶ 21-23. Prior to Plaintiff's pregnancy, "she was permitted to use flex time to make up for any time away from work during normal work hours that was not planned in advance," without the need for prior management approval. *Id.* at ¶¶ 24-25. In October 2021, Defendant Gonzales informed Plaintiff, for the first time, that she could not use flex time to make up for time away from work during normal business hours and denied Plaintiff's request to use flex time. *Id.* at ¶¶ 30-31. Another employee, who worked in the same unit as Plaintiff and did not have childcare responsibilities, was permitted to use flex time to compensate for a full day of missed work. *See id.* at ¶ 34.

In the fall of 2021, Defendant Gonzales permitted Plaintiff to take an afternoon off of work and to charge vacation time accruals. *Id.* at ¶ 38. However, in front of other employees, Defendant Gonzales threatened to un-approve the request when she learned that Plaintiff was taking the afternoon off to attend a class trip with her disabled son. *Id.* at ¶¶ 39, 43.[4] Defendant Gonzales purportedly made this threat because "the office was too busy, and as a result, [Defendant Gonzales] was unable to take time off to spend with her own son." *Id.* at ¶ 41. Ultimately, Plaintiff's time off request was not denied, but Defendant Gonzales insisted Plaintiff personally complete tasks due, despite the offers from other staff to complete the work. *Id.* at ¶¶ 44, 50.

---

[4] Plaintiff's older child suffers from developmental disabilities and was born before the events that underly the instant action. *See* Dkt. No. 17 at ¶¶ 27-28.

When Defendant Gonzales became Plaintiff's supervisor, she told Plaintiff that "there are not enough hours in the work week" for Defendant Gonzales to do her job during normal work hours, so she would need to call Plaintiff during non-work hours. *Id.* at ¶ 53. Defendant Gonzales called Plaintiff, without prior notice, every weekend, early in the morning before work hours, and in the evenings to discuss non-urgent work-related matters. *See id.* at ¶¶ 52-56. If Plaintiff did not immediately answer her work phone, Defendant Gonzales would "ceaselessly continue to call [Plaintiff's] work phone, and then her personal phone, until Plaintiff answered." *Id.* at ¶ 54. On or about April 7, 2021, Defendant Gonzales "also harassed [Plaintiff] again by showing up at Plaintiff's home, with no notice, to discuss non-emergency work-related matters," and only left "after Plaintiff made clear she would not meet with [Defendant] Gonzales because she was preparing her children for bed, and her wife was not at home to care for the children[.]" *Id.* at ¶ 58.

During the relevant time period, Defendants the State and DHSES did not offer paid maternity leave to employees and Plaintiff "used her own accrued paid time off and sick time to cover the time off from work she took for maternity leave in 2021." *Id.* at ¶ 59. Plaintiff gave Defendant DHSES notice that she would be delivering her child by a planned cesarian section, which would require Plaintiff to be out of work for at least forty days to heal. *See id.* at ¶ 60. On June 8, 2021, Plaintiff began her maternity leave and planned to return to work in mid-September, pending clearance from her doctor. *See id.* at ¶ 61. Throughout Plaintiff's approximately three-month maternity leave, Defendant Gonzales "continued to harass Plaintiff by contacting her by text and phone about non-emergency work-related matters many times each week." *Id.* at ¶ 62.

On September 2, 2021, Defendant Gonzales asked Plaintiff to return to work early from maternity leave "for what [Defendant] Gonzales said would be a one (1) day assignment." *Id.* at ¶

64.  Plaintiff was still healing and was not ready to return to work, but Defendant Gonzales made "it clear that if [Plaintiff] did not return to work for the assignment, her ability to transition from probation to a permanent employee would be at risk, which forced Plaintiff to agree to end her maternity leave early." *Id.* at ¶ 67.  The assignment, that Plaintiff was told would be a single day, turned out to be a weeks-long assignment that required Plaintiff to travel from her home near Albany to New York City and the surrounding areas on a daily basis to assist with Preliminary Damage Assessments being conducted after Hurricane Ida.  *See id.* at ¶¶ 68-69.  During the first two-weeks following Plaintiff's early return from maternity leave, Plaintiff worked fifteen days straight, for a total of one hundred thirty-six hours (sixty-one hours more than Plaintiff's typical work hours of seventy-five hours per pay period).  *See id.* at ¶¶ 70-71.  Plaintiff was afforded no flex time or additional compensation for this extra work.  *See id.* at ¶ 72.  Defendant Gonzales did not provide notice that the assignment would be extended, and Plaintiff struggled to heal from childbirth by cesarian section and pump breast milk for her newborn while carrying out the required tasks.  *See id.* at ¶¶ 74-75.

There was another DHSES employee, "who was out on non-pregnancy related medical leave during the same time period, [but] was never asked to return to work early by [Defendant] Gonzales or anyone else at DHSES."  *Id.* at ¶ 78.  This other DHSES employee "would have been a better fit for the assignment because he is the DHSES primary contact in New York City, which was the area most affected by Hurricane Ida."  *Id.* at ¶ 79.

Plaintiff's treatment in 2021 "was markedly different from Plaintiff's treatment by DHSES when she returned to work after taking maternity leave in 2019," when Defendant Gonzales was not her direct supervisor.  *Id.* at ¶ 80.  Indeed, in 2019 Plaintiff returned from maternity leave after a different major storm and Plaintiff's direct supervisor "accommodated her so that she could

complete her job duties while pumping at work to facilitate the nursing of her newborn at that time." *Id.* at ¶ 81. During the relevant time period, Plaintiff's union representative informed her that she could request additional maternity leave, but Plaintiff "was afraid to ask for additional maternity leave for fear that [Defendant] Gonzales would fire her." *Id.* at ¶¶ 76-77.

On September 5, 2021, after Plaintiff had commuted to and from the areas affected by Hurricane Ida for five days, Defendant Gonzales informed Plaintiff that she "would be required to move to New York City for approximately two (2) months to serve as the DHSES point of contact at the Hurricane Ida Joint Field Office." *Id.* at ¶ 85. As Plaintiff was still nursing her newborn, Plaintiff informed Defendant Gonzales that she had found a small rental home, which was less expensive than a hotel room, where Plaintiff could stay with her wife, who would be available to provide childcare during the day. *See id.* at ¶¶ 86-89. In response to Plaintiff's request for an accommodation, Defendant Gonzales told Plaintiff "Absolutely not!" and "refused to even discuss any accommodation of Plaintiff as a nursing mother." *Id.* at ¶ 90. Plaintiff was treated differently than other employees in similar situations, as DHSES had previously provided an apartment to a contractor, when the contractor was assigned to an extended assignment in New York City related to Hurricane Sandy. *See id.* at ¶¶ 92-94. This contractor was not a new mother or family caregiver at that time and "was permitted to have her boyfriend stay in the apartment paid by DHSES with her." *Id.* at ¶ 93.

Plaintiff informed Defendant Gonzales that she would not be able to be away from her infant for two months, which prompted Defendant Gonzales to "target[] Plaintiff and subject[] her to retaliation in the form of additional discriminatory mistreatment in an effort to drive Plaintiff out of her job at DHSES." *Id.* at ¶ 95.

Although Plaintiff told Defendant Gonzales, before Plaintiff took maternity leave, that she would need to pump breastmilk during the workday, Defendant Gonzales "assigned to her work in locations where Plaintiff was provided with no break to pump, and no place to pump, or only a place that was unsanitary and/or not private." *Id.* at ¶¶ 96-97. On Plaintiff's first day back, she had to use a bathroom floor at a municipal building in Mamaroneck to set up her pump. *See id.* at ¶ 98. When Plaintiff complained of this situation, Defendant Gonzales ignored her. *See id.* at ¶ 99. Throughout her time on the extended Hurricane Ida assignment, Plaintiff was "often forced" to pump in front of colleagues or on the Amtrak train during her commute. *Id.* at ¶¶ 100-09. Some of the travel Plaintiff had to make to New York City during the fall of 2021 was unnecessary; for example, at Defendant Gonzales' insistence, Plaintiff travelled to an office at the World Trade Center and virtually attended meetings, in a room away from the other attendees, because of COVID restrictions. *See id.* at ¶¶ 108-11. When Plaintiff expressed "the hardship she faced being in the field and traveling constantly while being a nursing mother, [Defendant] Gonzales was dismissive of Plaintiff's complaints, telling [Plaintiff] that she had also faced difficulties pumping when she returned to work from maternity leave and dealt with it." *Id.* at ¶ 112.

Plaintiff suffered from clogged ducts, which caused nausea and fevers, due to the long workdays without regular breaks to pump. *See id.* at ¶ 113. In response to Plaintiff's complaints about the lack of accommodations to pump and its impact on her health, Plaintiff's union representative "cautioned her that if she complained about the lack of accommodations afforded to her as a nursing mother, she would face retaliation and could lose her job." *Id.* at ¶ 115.

Even when Plaintiff worked out of her office at DHSES in Albany, she did not have access to a designated lactation room. *See id.* at ¶¶ 116-18. Plaintiff claims that "DHSES' failure

to have a designated lactation space for employees . . . demonstrated to [Plaintiff] and other nursing mothers that compliance with the law, which afforded them accommodation so that they could pump milk in a clean and safe environment at work, was not a priority." *Id.* at ¶ 118.

Plaintiff also communicated to Defendant Gonzales that she had been diagnosed with post-partum anxiety—a condition made worse by her travel to areas affected by Hurricane Ida. *See id.* at ¶¶ 124-25. After this disclosure, Defendant Gonzales subjected Plaintiff to "a lower rating on her probationary report because of Plaintiff's pregnancy-related mental health issue." *Id.* at ¶ 129. During her tenure at DHSES, Plaintiff consistently received a rating of "very good" prior to her return from maternity leave and "never had a supervisor disclose a medical condition that she shared with them in confidence in a performance review, which was the stated basis for the lower performance rating from [Defendant] Gonzales." *Id.* at ¶¶ 130-31.

In December 2021, Defendant Gonzales extended Plaintiff's probationary period by fifty-two days for purported excessive absences. *See id.* at ¶ 132. Defendant Gonzales told Plaintiff that "excessive absences are defined by DHSES as any time taken off beyond twenty (20) days." *Id.* at ¶ 133. "However, each of the fifty-two (52) days that [Plaintiff] took off was for maternity leave, which she was entitled [to] because she used accrued vacation and sick time for recovery from the [c]esarian [s]ection surgery and to care for her newborn." *Id.* at ¶ 134. Throughout her approximately four-and-a-half-year tenure at DHSES, Plaintiff never had any attendance problems and had never taken a sick day. *See id.* at ¶¶ 135-36. Defendant Gonzales told Plaintiff "that she had consulted with the Human Resources Department at DHSES and that someone there allegedly confirmed that the extension of Plaintiff's probationary period was required because she had taken maternity leave," and Defendant Gonzales suggested that Plaintiff "could be held accountable for not working weekend days during her maternity leave." *Id.* at ¶¶ 137-38.

During the second week of March 2022, Plaintiff claims that, through her own preparation of a probationary report for one of her direct reports, she discovered that Defendant Gonzales' decision to extend Plaintiff's probationary period was "motivated by illegal bias and/or retaliation and condoned by [the New York State Office of General Services ("OGS")]." *Id.* at ¶ 140. According to OGS, Plaintiff's direct report missed approximately forty days of work during her probationary period, which Plaintiff thought required an extension of the employee's probation based on Defendant Gonzales' representations; however, DHSES's Human Resources Department manager informed Plaintiff that "Civil Service Law does not mandate an extension of probation over 20 days, it simply allows it." *Id.* at ¶¶ 143-46. Plaintiff claims that her conversation with the Human Resources Department demonstrates that Defendant Gonzales' "insistence that she was required to extend Plaintiff's probation by the number of days she took off from work for maternity leave had no basis in fact." *Id.* at ¶ 147.

"Throughout the month of January 2022, Gonzales had four separate reminders on a shared calendar with Van Denburgh that instructed her to provide Plaintiff with the final report regarding her performance during her probationary period, which was supposed to end on February 25, 2022." *Id.* at ¶ 148. This final probation report would serve as confirmation that Plaintiff's "employment at DHSES would continue as a permanent employee, or whether her employment at the agency would end and she would be fired." *Id.* at ¶ 149. Defendant Gonzales did not provide Plaintiff a final report, despite the reminders on her calendar. *See id.* at ¶ 150. Plaintiff became nervous that she would be fired by Defendant Gonzales with no notice. *See id.* at ¶ 151. Plaintiff contacted Melissa Homin at OGS, because she had previously sent Plaintiff the probation extension letter, and Ms. Homin contacted Donny Miller at DHSES Human Resources to inquire about Plaintiff's employment status. *See id.* at ¶¶ 151-53. Mr. Miller told Defendant

Gonzales that Plaintiff had inquired about her final probation report and future employment status, but Defendant Gonzales "continued to ignore" Plaintiff's requests for this information. *See id.* at ¶¶ 154-55.

On February 25, 2022, Defendant Gonzales called Plaintiff "to ask why she was looking for information confirming the end of her probation period." *Id.* at ¶ 156. Defendant Gonzales told Plaintiff: "If I was going to fail you, I would have already had to have done so, so I guess you passed"; however, in the weeks that followed, Plaintiff received no written notice that she had passed probation. *Id.* at ¶¶ 157-58. Plaintiff feared that the delay in receiving written notice indicated she would be fired, so she began to search for a new job. *See id.* at ¶ 159.

On or about March 16, 2022, after Plaintiff had "secured a new job and could afford to leave DHSES," Plaintiff submitted a detailed complaint to Defendant Bray, the Commissioner of DHSES. *Id.* at ¶ 160. In her complaint to Defendant Bray, Plaintiff informed Defendant Bray that she had still not received a final probation report and "detailed the discriminatory mistreatment she had been subjected to by [Defendant] Gonzales before and after her maternity leave in 2021, and the retaliation she was subjected to after she refused the two-month assignment to New York City because of a lack of accommodation so that she could continue nursing her newborn." *Id.* at ¶ 161. Plaintiff resigned from her position because Defendant Bray "failed to timely respond" to Plaintiff's complaint. *Id.* at ¶¶ 163-64.

Two weeks after Plaintiff's March 16, 2022, complaint, Defendant Bray sent Plaintiff an email that stated:

> Erin,
>
> I know that I didn't respond immediately to your note but I want to assure you that I take any complaint such as this seriously and this

> was immediately referred to the appropriate agency for investigation.
>
> I want everyone working at DHSES to feel supported and I hold our management team to high standards.
>
> I wish you the best in your future work.
>
> Jackie

*Id.* at ¶ 165. In January 2022, Defendant Bray also failed to meet with one of Plaintiff's former colleagues, who complained about DHSES' "failure to afford 'fair and equitable treatment to post-partum mothers.'" *Id.* at ¶ 166 (quotation omitted). Other employees have also "complained to [Defendant] Bray specifically about [Defendant] Gonzales' discriminatory misconduct aimed at new mothers." *Id.* at ¶ 168. According to Plaintiff, Defendant Gonzales refused a reasonable accommodation requested by the former Deputy Chief of Mitigation Programs at DHSES, who was pregnant, and the Human Resources department did not remedy the situation. *See id.* at ¶¶ 169-70.

Other employees at DHSES "are too afraid to come forward to raise any complaints about discriminatory mistreatment because of their status as pregnant or new mothers." *Id.* at ¶ 171. In February 2022, Plaintiff spoke to one such employee, who was afraid to inform DHSES leadership she was pregnant. *See id.* at ¶¶ 172-75. "Plaintiff is unaware of any changes to the current work environment at DHSES, which remains incredibly toxic and threatening to pregnant/postpartum women, which is illegal conduct that is condoned by [Defendant] Bray." *Id.* at ¶ 176.

After Plaintiff's constructive discharge on March 16, 2022, "Plaintiff found work at another government agency where she has a less senior position than she did at DHSES, and where she earns less." *Id.* at ¶ 177. Plaintiff continues to receive care from a therapist for "the

anxiety and trauma caused by the illegal discriminatory and retaliatory mistreatment she was subjected by Defendants in 2021 and 2022." *Id.* at ¶ 178.

On August 15, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and, on or about May 15, 2024, the EEOC issued Plaintiff a right-to-sue letter. *See id.* at ¶¶ 11-12.  Plaintiff brings the following claims before this Court: (1) gender discrimination in violation of Title VII against the State and DHSES; (2) retaliation in violation of Title VII against the State and DHSES; (3) discrimination based on gender in violation of the Equal Protection Clause, pursuant to § 1983, against Defendant Gonzales; (4) retaliation in violation of the Equal Protection Clause, pursuant to § 1983, against Defendants Gonzales and Bray; (5) discrimination on the basis of gender and family care responsibilities in violation of the HRL against the State, DHSES, and Gonzales; and (6) retaliation in violation of the HRL against all Defendants.  *See id.* at ¶¶ 179-205.

Defendants now move to partially dismiss Plaintiff's claims, pursuant to Rule 12(b)(6), for the following reasons:

> (1) New York State is not a proper party to Plaintiff's Title VII claims; (2) Plaintiff's claims against [Defendant] Bray are barred by the Eleventh Amendment; (3) Plaintiff fails to state a Title VII retaliation claim; (4) any Title VII claims arising out of acts that allegedly occurred more than 300 days before Plaintiff filed a charge of discrimination with the [EEOC] should be dismissed as untimely; (5) Plaintiff cannot establish a gender-based discrimination § 1983 claim against [Defendant] Gonzales to the extent such claim is premised upon an alleged unavailability of areas to pump breastmilk; (6) Plaintiff cannot establish a § 1983 retaliation claim against [Defendant] Gonzales or [Defendant] Bray; (7) Plaintiff cannot establish a claim under the HRL against the State of New York, DHSES, or [Defendant] Bray; (8) Plaintiff lacks standing to seek a declaratory judgment; and (9) Plaintiff is not entitled to an injunction.

Dkt. No. 18-1 at 19.[5]  Defendants also contend that Plaintiff cannot recover punitive damages for her HRL claims.  *See id.* at 36.

### III. DISCUSSION

**A.    Legal Standard**

*1. Rule 12(b)(6)*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the

---

[5]  Defendants argue, for the first time in their reply brief, that Plaintiff cannot bring any claims predicated on allegations of discrimination against Defendant Gonzales, under the HRL, Title VII, or § 1983, because Plaintiff's "discrimination allegations do not include any direct evidence of discrimination." Dkt. No. 27 at 25.  Defendants support this argument with the bare assertion that, because Defendant Gonzales is also a mother, a reasonable inference of discrimination cannot be drawn from Plaintiff's allegations.  *See id.* at 26.  The Court declines to address Defendants' arguments that are raised for the first time in their reply brief.  *See Adecco USA, Inc. v. Staffworks, Inc.*, No. 6:20-CV-744, 2022 WL 16571380, *5 (N.D.N.Y. Nov. 1, 2022) ("The law in the Second Circuit is clear that arguments or requests for relief raised for the first time in reply briefs need not be considered") (citing *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007); *Sacchi v. Verizon Online LLC*, No. 14-CV-423, 2015 WL 1729976, *1 n.1 (S.D.N.Y. Apr. 14, 2015)).

speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on

[their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement

of relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a

complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at

558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to

plausible, the[ ] complaint must be dismissed." *Id.* at 570.

In deciding a motion to dismiss, the court may consider "documents attached to, or

incorporated by reference in the Complaint, and matters of which judicial notice may be taken[.]"

*Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citing

*Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999)) (other citation

omitted).  "Documents that are integral to plaintiff's claims may also be considered, despite

plaintiff's failure to attach them to the complaint."  *Id.* (citing *Cortec Indus., Inc. v. Sum Holding,

L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991)).  "Judicial notice of public records is appropriate—and

does not convert a motion to dismiss into a motion for summary judgment—because the facts

noticed are not subject to reasonable dispute and are capable of being verified by sources whose

accuracy cannot be reasonably questioned." *Bentley v. Dennison*, 852 F. Supp. 2d 379, 382 n.5

(S.D.N.Y. 2012).

### *2. Rule 12(b)(1)*

Although Defendants style their motion as one brought exclusively pursuant to Rule

12(b)(6), "challenges to a party's standing to sue are more properly analyzed under Rule 12(b)(1),

since they implicate the Court's subject matter jurisdiction." *Girotto v. LXC Inc.*, No. 19-CV-2858, 2020 WL 3318275, *3 (S.D.N.Y. June 18, 2020) (citation omitted).  "'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

Pursuant to Article III, Section 2 of the United States Constitution, "the jurisdiction of the federal courts is limited to 'Cases' and 'Controversies,' which 'restricts the authority of the federal courts to resolving "the legal rights of litigants in actual controversies."'" *Amityville Mobile Home Civic Ass'n v. Town of Babylon*, No. 14-CV-2369, 2015 WL 1412655, *2 (E.D.N.Y. Mar. 26, 2015) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013)).  In the absence of a case or controversy, Rule 12(b)(1) "provides that a party may move to dismiss a case for lack of subject matter jurisdiction." *Id.* at *3 (citing *Makarova*, 201 F.3d at 113).

"As standing is 'a limitation on the authority of a federal court to exercise jurisdiction,' it is properly addressed within the context of a Rule 12(b)(1) motion." *City of New York v. Milhelm Attea & Bros.*, 550 F. Supp. 2d 332, 340 (E.D.N.Y. 2008) (quoting *Alliance For Envt'l Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6 (2d Cir. 2006)).  To survive a defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), "a plaintiff must allege facts 'that affirmatively and plausibly suggest that it has standing to sue.'" *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 227 (E.D.N.Y. 2015) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

When standing is challenged on the basis of the pleadings, the court must "'accept as true all material allegations of the complaint, and must construe the complaint in favor of [the

plaintiff].'" *All. for Open Society Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 227 (2d

Cir. 2011) (quotation omitted).  "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the

allegations of the complaint . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort*

*Technologies, LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citation omitted).

**B.    Unopposed Issues**

In her brief opposing the motion to dismiss, Plaintiff explicitly concedes that her HRL

claims against the State and DHSES are barred by the Eleventh Amendment and that she cannot

seek punitive damages under HRL § 297(4)(c) because such damages can only be sought against

private employers.  *See* Dkt. No. 22 at 7 n.2.

As Plaintiff does not oppose dismissal of these claims and remedy, Defendants' unopposed

and facially meritorious arguments are granted.  *See Johnson v. Lew*, No. 1:13-CV-1072, 2015

WL 4496363, *5 & n.6 (N.D.N.Y. July 23, 2015); *Metro. Prop. & Cas. Ins. Co. v. Rodick*, No.

1:21-CV-1039, 2023 WL 6122849, at *5 & n.4 (N.D.N.Y. Sept. 19, 2023); N.D.N.Y. L.R.

7.1(a)(3); *see also Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) ("A

district court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond

to a defendant's arguments that the claim should be dismissed'") (quoting *Felix v. City of New*

*York*, 344 F. Supp. 3d 644, 654-55 (S.D.N.Y. 2018)).

**C.    Standing for Declaratory and Injunctive Relief**

Plaintiff asks the Court to "grant her injunctive relief to enjoin and permanently restrain

Defendants from violating her civil rights under Section 1983, Title VII, and NYSHRL [and]

declare that the acts and practices complained of [in the second amended complaint] are in

violation of Section 1983, Title VII, and NYSHRL[.]"  Dkt. No. 17 at 30.  Defendants argue that

Plaintiff does not have standing to seek the declaratory relief requested in the second amended

complaint because she alleges past violations of law and does not seek prospective relief. *See* Dkt. No. 18-1 at 37-39. Additionally, Defendants contend that the injunctive relief sought is moot, as Plaintiff is no longer a DHSES employee and that the requested injunction is merely an "obey the law" injunction, which is not favored by courts in this Circuit. *See id.* at 38. Plaintiff argues that, although she no longer works for DHSES, she continues to be employed by the State, at another agency and, therefore, she has standing to seek declaratory and injunctive relief. *See* Dkt. No. 22 at 41-46.

Plaintiff submits a declaration which states that she continues to work for the State and, as such, a declaratory judgment that she was subjected to illegal discrimination "would help [her] explain to any prospective employers inside and outside New York State government why [she] left DHSES," as she is unable to obtain a letter of recommendation from senior officials. Dkt. No. 22-1 at ¶¶ 4-7. Plaintiff's declaration also states, *inter alia*, that declaratory and injunctive relief would "ensure that no one employed by the State of New York, whether at DHSES or elsewhere, retaliates against [her] for bringing this lawsuit against the named defendants in the future." *Id.* at ¶ 8. Defendants argue that it would be improper for the Court to consider Plaintiff's declaration because courts should not consider new factual assertions made via affidavit or declaration submitted in opposition to a motion to dismiss. *See* Dkt. No. 27 at 23.

Although Defendants incorrectly rely upon caselaw relevant to a 12(b)(6) motion—as subject matter jurisdiction is a 12(b)(1) inquiry—the spirit of Defendants' argument is correct and the Court, in its discretion will not consider Plaintiff's declaration. "'A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial,' *i.e.*, based solely on the allegations of the complaint and exhibits attached to it, 'or fact-based,' *i.e.*, based on evidence beyond the pleadings." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) (quoting *Carter*, 822

F.3d at 56).  Although a district court "may refer to evidence outside the pleadings" when resolving a 12(b)(1) motion, *Makarova*, 201 F.3d at 113, "it is not invariably required to consider such evidence," *Harty*, 28 F.4th at 441 (citing *Carter*, 822 F.3d at 56-58).  A court has the "obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits" only where "jurisdictional facts are placed in dispute."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quotation and internal quotation marks omitted).  "When the extrinsic evidence submitted by the parties does not controvert the material allegations of the complaint, it is not error for the district court to base its ruling solely on the allegations of the complaint[.]"  *Harty*, 28 F.4th at 441 (citing *Carter*, 822 F.3d at 57).

District Courts have "broad discretion" and "considerable latitude" in "determining how to consider challenges to subject matter jurisdiction."  *Id.* at 441-42 (collecting cases) (internal quotation marks and italics omitted).  Thus, the Second Circuit has held that a district court does not abuse its discretion in declining to consider a plaintiff's affidavit where the defendant's Rule 12(b)(1) motion is "a facial challenge directed solely at the sufficiency of the complaint's jurisdictional allegations, not a factual challenge, [because] the defendant [does not] place any jurisdictional facts in dispute."  *Id.* at 442.

Here, Defendants' challenge is facial, not factual, as they solely challenge the sufficiency of the jurisdictional allegations in Plaintiff's second amended complaint.  And, as the extrinsic evidence in Plaintiff's declaration is "intended to enhance, not contradict, the allegations in h[er] complaint," the Court, in its discretion, declines to consider it for purposes of Defendants' motion to dismiss for lack of standing.  *Id.*; *see De Medicis v. Ally Bank*, No. 21-CV-6799, 2022 WL 3043669, *8 (S.D.N.Y. Aug. 2, 2022) ("[B]y the rest of his assertions in his declaration, [the p]laintiff inappropriately seems to 'shore up a deficient complaint through extrinsic documents

submitted in opposition to a defendant's motion to dismiss'") (quoting *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010) (holding that plaintiff could not amend her complaint through a legal memorandum filed in opposition to a motion to dismiss)).  Instead, the Court will weigh the sufficiency of allegations in the second amended complaint itself.

A court has no subject matter jurisdiction to hear a claim where the plaintiff lacks standing under Article III of the Constitution.  *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).  In order to establish Article III standing, a plaintiff must show: "(1) that they 'suffered an injury in fact,' (2) that the injury 'is fairly traceable' to [the d]efendants' challenged conduct, and (3) that the injury 'is likely to be redressed by a favorable judicial decision.'"  *Soule v. Conn. Ass'n of Sch.*, 90 F.4th 34, 45 (2d Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  A "'plaintiff[ ] must demonstrate standing for each claim that they press and for each form of relief that they seek.'"  *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)).  Where a "plaintiff[ ] seek[s] . . . declaratory relief, they 'cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [they] will be injured in the future.'"  *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (quotation omitted).  The same is true for injunctive relief.  *See Harty v. Simon Prop. Grp., L.P.*, 428 Fed. Appx. 69, 71 (2d Cir. 2011) ("[A] plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm") (citations omitted).  "[A]n allegation of future injury will be sufficient only if 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'"  *Dorce*, 2 F.4th at 95 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

In the present matter, Plaintiff fails to establish Article III standing for her claims for declaratory relief under Title VII, the HRL and § 1983 because the second amended complaint fails to plausibly allege that Plaintiff continues to be injured, that there is a substantial risk that future injury will occur, or that she faces threatened injury that is certainly impending. *See Dorce*, 2 F.4th at 95. Moreover, Plaintiff seeks a declaration that Defendants' *past conduct* was unconstitutional—"relief that stands in contrast to the prospective nature of relief in the form of a declaratory judgment." *Greene v. Northwell Health Inc.*, No. 2:23-CV-4846, 2024 WL 4287875, *9 (E.D.N.Y. Sept. 25, 2024). Accordingly, Plaintiff's request for declaratory relief is dismissed without prejudice for lack of subject matter jurisdiction. *See Merck-Medco Managed Care*, 433 F.3d at 198.

The Court reaches the same conclusion regarding Plaintiff's request for injunctive relief. Plaintiff principally relies on *Robinson v. Blank*, No. 11-CV-2480, 2013 WL 2156040 (S.D.N.Y. May 20, 2013) for the proposition that she has standing to seek an injunction preventing Defendants from discriminating against her in the future. *See* Dkt. No. 22 at 44-45. In *Robinson*, the court found the plaintiff had standing to seek an injunction requiring the defendant to expunge agency records of his termination (which contained a harmful clerical error that had not been corrected) and to seek reinstatement, finding that the plaintiff's injuries were non-speculative and an injunction would remedy the harm. *See id.* at *3-6. Thus, *Robinson* stands for the proposition that a plaintiff may have standing to seek an injunction that requires a former employer to expunge personnel files that contain false information or to reinstate the employee after wrongful termination. *See id.*

Here, however, Plaintiff does not seek expungement of her records or reinstatement; she merely seeks an injunction that would "enjoin and permanently restrain Defendants from violating

her civil rights under Section 1983, Title VII, and NYSHRL." Dkt. No. 17 at 30. The second amended complaint is devoid of any facts that could support an inference that such injury is "certainly impending" or that "there is a substantial risk that the harm will occur." *Dorce*, 2 F.4th at 95. Indeed, it is hard to imagine how DHSES could discriminate against Plaintiff in the future, as she is no longer employed by the agency.[6] The threat of future harm alleged is, at best, speculative and, therefore, does not satisfy the standing requirements for injunctive relief. Accordingly, Plaintiff's claim for injunctive relief must be dismissed without prejudice for lack of subject matter jurisdiction.

**D.    Title VII Claims against the State**

Defendants move to dismiss Plaintiff's Title VII claims, insofar as it they are brought against the State, arguing that the State "is not a permissible defendant for such claims." Dkt. No. 18-1 at 24. Defendants contend that Plaintiff has failed to establish the requisite employer-employee relationship of a Title VII claim because Plaintiff was an employee of a New York State agency, DHSES, and not the State itself. *See id.* at 24-25. Plaintiff responds that she has pled facts that sufficiently establish a plausible employment relationship with the State. *See* Dkt. No. 22 at 19-23.

Pursuant to Title VII, it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "Consequently, the existence of an employer-employee relationship is a primary element of Title

---

[6] As is discussed below, Plaintiff's claims against the State are dismissed, so whether Plaintiff remained or currently is an employee of the State is not relevant to the present jurisdictional inquiry.

VII claims." *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) (citations

omitted). In determining whether an employment relationship exists, courts "look[] to 'traditional

indicators of employment under the common law of agency,' including whether the alleged

employer exercised 'direct, obvious, and concrete' control over the plaintiff's day-to-day

activities," *Penz v. Washer*, No. 18-CV-4964, 2019 WL 1922040, *2 (S.D.N.Y. Apr. 30, 2019)

(quoting *Gulino*, 460 F.3d at 379), including whether the entity "'hired and compensated' the

plaintiff," *La Martina v. Fischer*, No. 12-CV-308A, 2013 WL 1682603, *3 (W.D.N.Y. Mar. 19,

2013), *report and recommendation adopted*, 2013 WL 1681492 (W.D.N.Y. Apr. 17, 2013)

(quoting *Gulino*, 460 F.3d at 379). "To survive a motion to dismiss, a plaintiff must allege

sufficient facts to suggest an employment relationship." *Harris v. New York*, No. 20-CV-8827,

2022 WL 445776, *3 (S.D.N.Y. Feb. 14, 2022) (citation omitted).

   Liability will generally be imputed to the employer when the alleged discriminatory

conduct is effectuated by an employee's supervisor. *See Richardson v. N.Y.S. Dep't of Corr.

Serv.*, 180 F.3d 426, 441 (2d Cir. 1999), *abrogated on other grounds*, *Burlington N. & Santa Fe

Ry. Co. v. White*, 548 U.S. 53 (2006); *but see Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72-

73 (1986) (concluding that employers are not *automatically* liable for their supervisors' sexual

harassment, and a court must look to agency principles in light of particular circumstances). "An

employer will, however, *always* be vicariously liable when its negligence perpetuates a hostile

work environment, and accordingly, '[e]vidence that an employer did not monitor the workplace,

failed to respond to complaints, failed to provide a system for registering complaints, or

effectively discouraged complaints from being filed would be relevant.'" *Rock v. Blaine*, No.

8:14-CV-1421, 2015 WL 3795886, *5 (N.D.N.Y. June 17, 2015) (quoting *Vance v. Ball State

Univ.*, 570 U.S. 421, 449 (2013)) (emphasis in original). As such, when an employer has

effectively delegated the power to take "tangible employment actions" against employees to "a few individuals," it will not succeed in isolating itself from liability. *Vance*, 570 U.S. at 446-47.

Some courts have dismissed Title VII claims against the State of New York where the plaintiff has failed to allege that the State of New York was his or her employer and the plaintiff was an employee of a state agency. *See, e.g.*, *Harris*, 2022 WL 445776 at *3 (dismissing Title VII claim against the State without prejudice where the plaintiff worked in the Office of New York State Comptroller's Office of Unclaimed Funds as the Assistant to the Director of Audits but failed to allege that the State paid his wages or "'exercised direct, obvious, and concrete control'" over his day-to-day duties) (quotation omitted); *La Martina*, 2013 WL 1682603, at *3-5 (dismissing Title VII claim against the State where the plaintiff, a correctional facility cook, did not plausibly allege that the State was her employer). However, as Plaintiff argues, *see* Dkt. No. 22 at 22, this Court has found that where a plaintiff has alleged both the State of New York and a state agency "retaliated against her by failing to take corrective action in response to her complaints; in effect condoning the discrimination against her by her supervisor for which liability may be imputed to her employer," a reasonable inference could be drawn that the State was alleged to be the plaintiff's employer and could be potentially liable under Title VII, *Rock*, 2015 WL 3795886, at *6.

Here, Plaintiff's reliance on *Rock* is misplaced. Importantly, in *Rock*, the plaintiff's complaint specifically "allege[d] that both entities bear responsibility as her joint employers because various supervisory responsibilities and policy decisions regarding [the p]laintiff's employment [were] divided between DOCCS as an agency, and the State of New York directly." *Id.* In the present matter, Plaintiff alleges that both DHSES and the State violated Title VII, but the second amended complaint is devoid of factual allegations that the State itself had any

supervisory responsibilities or made policy decisions regarding Plaintiff's employment. *See* Dkt. No. 17 at ¶¶ 179-87. Further, Plaintiff does not allege that the State paid her salary or was responsible for supervising her employment benefits or civil service status. *See Penz*, 2019 WL 1922040, at *2 (dismissing Title VII claims against the State because the plaintiff failed to allege the State was her employer and noting that "[t]he plaintiff in *Rock v. Blaine* . . . alleged the State paid her salary, supervised her employment benefits and civil service status, and signed the collective bargaining with plaintiff's union"). As such, there are no facts to support Plaintiff's conclusory assertion that that the State employed her. *See* Dkt. No. 17 at ¶¶ 179-87. Therefore, Plaintiff fails to allege that the State is her employer within the meaning of Title VII, and her Title VII claims against the State must be dismissed.[7]

**E.       Sovereign Immunity**

Defendants argue that Plaintiff's claims against Defendant Bray must be dismissed because the Eleventh Amendment bars damages actions against state officers acting in their official capacities. *See* Dkt. No. 18-1 at 22-23.[8] Plaintiff contends that Defendant Bray is sued in her personal capacity and, thus, the Eleventh Amendment does not prevent Plaintiff from bringing claims against Defendant Bray for retaliation under the HRL or § 1983. *See* Dkt. No. 22 at 35-36.

---

[7]  As Plaintiff has failed to allege that the State was her employer within the meaning of Title VII, the Court does not reach the parties' contentions regarding whether Defendant Bray is an employee of DHSES or the State. *See* Dkt. No. 22 at 22; Dkt. No. 27 at 9.

[8]  The Second Circuit has recognized that it is an open issue whether Eleventh Amendment immunity should be treated as depriving a court of subject-matter jurisdiction or as providing a defendant with an affirmative defense for the purposes of assessing whether any dismissal on that basis is pursuant to Rules 12(b)(1) or 12(b)(6). *See Allco Fin. Ltd. v. Roisman*, No. 22-2726, 2023 WL 4571965, *1 (2d Cir. July 18, 2023). The Court's analysis remains the same regardless of whether conducted in the context of a Rule 12(b)(1) or 12(b)(6) motion, as all inferences are drawn in Plaintiff's favor and the Court relies on the pleadings. *See id.*

24

"The Eleventh Amendment bars a damages action in federal court against a state and its officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015); *see Huffman v. Brooklyn Coll.*, No. 20-CV-06156, 2022 WL 43766, *2 n.4 (E.D.N.Y. Jan. 5, 2022) ("When acting in their official capacities, state officials' immunity is coextensive with the state's") (citing *California v. Deep Sea Rsch., Inc.*, 523 U.S. 491, 502 (1998). Although Title VII does not impose liability on individuals, under the HRL "liability for employment discrimination may be imposed on individuals," *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012), and an individual may be held liable under § 1983 if that individual "was personally involved in the alleged deprivation," *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (citation omitted).

In support of their argument that the Court must construe Plaintiff's allegations against Defendant Bray as official capacity claims (despite the second amended complaint's clear indication that such claims are brought against Defendant Bray in her individual capacity), Defendants rely on a body of caselaw that is inapposite to the case at bar. *See* Dkt. No. 18-1 at 22-23. For example, in *Degrafinreid v. Ricks*, the court discussed the immunity afforded to corrections officers by Section 24(1) of the New York State Correction Law. *See Degrafinreid v. Ricks*, 452 F. Supp. 2d 328, 332 (S.D.N.Y. 2006). Section 24(1) immunity is of no consequence here. Indeed, Defendants provide no authority to support a conclusion that an identical scope of employment analysis that is relevant to Section 24(1) immunity is applicable to Eleventh Amendment immunity for retaliation claims brought under the HRL or § 1983.

As pled, Plaintiff's claims against Defendant Bray are not barred by the Eleventh Amendment. "Under the NYSHRL, an individual can be held liable either as an employer who

25

has 'an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others,' or as an aider and abettor 'if they personally participate in the conduct giving rise to a discrimination claim.'" *Dawkins v. State Univ. of N.Y. at Cortland*, No. 5:23-CV-1163, 2024 WL 3377938, *7 (N.D.N.Y. July 11, 2024) (quotation omitted). "Courts within this circuit are split on the question of whether a finding that sovereign immunity bars a claim against a plaintiff's employer would also mean that an individual cannot be held liable as an aider or abettor of that state employer's conduct." *Id.* (collecting cases). But, as one court observed, although sovereign immunity bars recovery, "it does not extinguish predicate liability on the merits," and therefore does not pose as an absolute barrier to an aider/abettor claim against an individual employee. *Huffman*, 2022 WL 43766, at *3 (citation omitted).

The Court follows the reasoning of the district courts in this Circuit that have held that the dismissal of the State on grounds of sovereign immunity "does not necessarily direct that dismissal of the claims against the individual defendants in their individual capacities is required." *Weems v. New York*, No. 6:23-CV-6305, 2024 WL 4150397, *14 (W.D.N.Y. Sept. 10, 2024); *see, e.g.*, *Dawkins*, 2024 WL 3377938, at *7; *Bonaffini v. City Univ. of N.Y.*, No. 20-CV-5118, 2021 WL 2895688, *3 (E.D.N.Y. July 9, 2021); *Tromblee v. New York*, No. 1:19-CV-0638, 2021 WL 981847, *17 (N.D.N.Y. Mar. 16, 2021). Accordingly, Defendant Bray "may still be held individually liable for actions she can only perform as a state official, because the logic of sovereign immunity doctrine . . . does not extend to judgments against its employees." *Huffman*, 2022 WL 43766, at *3.[9]

**F.      Timeliness of Title VII Claims**

---

[9]  Defendants' arguments regarding Defendant Bray's personal involvement, for purposes of § 1983 liability, *see* Dkt. No. 18-1 at 23, will be addressed below.

### 1. Statutes of Limitations

Defendants argue that Plaintiff's Title VII claims must be dismissed to the extent they are based on untimely acts of alleged discrimination.  *See* Dkt. No. 18-1 at 26-28.  Defendants acknowledge that Plaintiff filed her complaint with the EEOC on August 15, 2022.  *See id.* at 26. Because a charge of discrimination must be filed with the EEOC 300 days after the alleged unlawful employment practice occurred, Defendants contend that the Court should not consider any alleged conduct that occurred prior to October 19, 2021.  *See id.* at 26-28.  In response, Plaintiff argues that the continuing violation doctrine permits the Court to consider the alleged conduct outside of the statutory time period.  *See* Dkt. No. 22 at 23-26.

"Generally, dismissal based on the statute of limitation under Rule 12(b)(6) is 'irregular' and must usually wait until a later stage of the proceedings."  *Kelley v. Ithaca Coll.*, No. 3:18-CV-1082, 2019 WL 13300906, *6 (N.D.N.Y. June 18, 2019) (quoting *U.S. v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004)).  "Dismissal of a claim at the pleading stage based on a statute of limitations affirmative defense 'is appropriate only if a complaint clearly shows the claim is out of time.'"  *Id.* (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)) (other citations omitted).

Before filing a suit in federal court under Title VII, "the claimant must make the EEOC filing within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a 'Notice of Right to Sue' letter from the EEOC."  *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (quotation omitted).  "Although the exhaustion of administrative remedies through filing with the EEOC is not a jurisdictional requirement, 'it remains . . . an essential element of Title VII's statutory scheme, . . . and one with which defendants are entitled to insist that plaintiffs comply.'"  *Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 205

(E.D.N.Y. 2006) (quoting *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)).  Courts

have noted that "[t]he 300-day limitations period is not a jurisdictional prerequisite to suit in

federal court; it is 'a requirement that, like a statute of limitations, is subject to waiver, estoppel

and equitable tolling,'" *Mauro v. Bd. of Higher Educ.*, 658 F. Supp. 322, 324 (S.D.N.Y. 1986)

(quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)), as well as the continuing

violation doctrine exception, *see Cruz v. City of New York*, No. 21-CV-1999, 2021 WL 5605139,

*4 (S.D.N.Y. Nov. 30, 2021).

As noted, Plaintiff exhausted her remedies prior to filing her complaint by filing a charge

of discrimination with the EEOC on August 15, 2022.  *See* Dkt. No. 17 at ¶ 11.  As such,

Plaintiff's Title VII claims must arise from events that occurred after October 19, 2021, 300 days

prior to her filing with the EEOC.  In the absence of an exception, any claims that accrued prior to

October 19, 2021, are time barred.[10]

## 2. The Continuing Violation Doctrine and Hostile Work Environment

A plaintiff's claims may prevail as to events that predate the statute of limitations period if

the "continuing violation exception to the normal knew-or-should-have-known accrual date of a

discrimination claim" applies.  *Kelley*, 2019 WL 13300906, at *8 (quoting *Harris*, 186 F.3d at

248) (internal quotation marks omitted).  Under the continuing violation doctrine, if a plaintiff has

experienced a "continuous practice and policy of discrimination, . . . the commencement of the

statute of limitations period may be delayed until the last discriminatory act in furtherance of it."

*Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (quotation and internal quotation

marks omitted).  "If a continuing violation is shown, a plaintiff is entitled to have a court consider

---

[10]  Plaintiff's HRL and § 1983 claims are subject to different statutes of limitation, but, because Defendants do not move to dismiss these claims as untimely, the Court does not reach the issue presently.

all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996). "[I]f a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely, even if they would be untimely standing alone." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 155-56 (2d Cir. 2012) (quotation and internal quotation marks omitted).

"[A] continuing violation may be found 'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Fitzgerald*, 251 F.3d at 359 (quotation omitted). "[T]he plaintiff must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Rivas v. New York State Lottery*, 745 Fed. Appx. 192, 193 (2d Cir. 2018) (quoting *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013)).

"However, this doctrine is inapplicable to 'discrete acts' of discrimination, even if they are 'related to acts alleged in timely filed charges.'" *Le v. New York State, Off. of State Comptroller*, No. 1:16-CV-1517, 2017 WL 3084414, *5 (N.D.N.Y. July 18, 2017) (quoting *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 664 (E.D.N.Y. 2015)). Therefore, it is not sufficient to plead "'multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism.'" *Troeger v. Ellenville Cent. Sch. Dist.*, No. 10-CV-718, 2012 WL 1605532, *3 (N.D.N.Y. May 8, 2012) (quoting *Valtchev v. City of New York*, 400 Fed. Appx. 586, 588-89 (2d Cir. 2010)).

"Courts in the Second Circuit generally disfavor the continuing violation doctrine and have declined to extend its applicability absent compelling circumstances." *Mwantuali v. Hamilton Coll.*, No. 6:22-CV-1395, 2024 WL 1219752, *7 (N.D.N.Y. Mar. 20, 2024) (collecting cases). "Such compelling circumstances include 'unlawful conduct tak[ing] place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is an express, openly espoused policy that is alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness.'" *Clemmons v. Holder*, No. 13-CV-7229, 2015 WL 4894184, *5 (E.D.N.Y. Aug. 17, 2015) (quoting *Koehl v. Greene*, No. 06-CV-0478, 2007 WL 2846905, *7-9 (N.D.N.Y. Sept. 26, 2007)) (other citation omitted). "At this pleading stage the focus is on whether [the] plaintiff has sufficiently pled a continuing violation so as to extend the statute of limitations." *Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 414 (N.D.N.Y. 2005).

Similarly, hostile work environment claims are treated with a different approach than discrete acts because "[t]heir very nature involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (citation omitted). "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (citation omitted).

To state a hostile work environment claim under Title VII, a plaintiff must show "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quotation and internal quotation marks omitted). The first prong must be evaluated on

both a subjective and objective basis: "the conduct complained of must be severe or pervasive

enough that a reasonable person would find it hostile or abusive, and the victim must subjectively

perceive the work environment to be abusive." *Littlejohn v. City of New York*, 795 F.3d 297, 321

(2d Cir. 2015) (quotation and internal quotation marks omitted).  Courts must consider "the

totality of the circumstances," and assess the cumulative effect of individual actions in aggregate

to determine if the plaintiff has alleged a hostile work environment.  *Id.*

On a motion to dismiss, "a plaintiff need only plead facts sufficient to support the

conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable

employee would find the conditions of her employment altered for the worse.'"  *Patane v. Clark*,

508 F.3d 106, 113 (2d Cir. 2007) (quotation omitted).  "The Second Circuit has 'repeatedly

cautioned against setting the bar too high' at the initial pleading stage." *Lee v. Riverbay Corp.*,

751 F. Supp. 3d 259, 286 (S.D.N.Y. 2024) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir.

2003)).

The Second Circuit has clarified that "[i]n order for a timely incident to prolong a hostile

work environment created by earlier action, the timely incident must be sufficiently related to the

prior events so that they can be said to be part of the 'same' hostile work environment."

*Sanderson v. N.Y.S. Elec. & Gas Corp.*, 560 Fed. Appx. 88, 91 (2d Cir. 2014) (quoting *Morgan*,

536 U.S. at 118).  Courts in this Circuit have adopted a three-factor test established by the Fifth

Circuit in *Berry v. Board of Supervisors* to evaluate continuing violations in hostile work

environment claims:

> "The first [inquiry] is subject matter.  Do the alleged acts involve
> the same type of discrimination, tending to connect them in a
> continuing violation?  The second is frequency.  Are the alleged
> acts recurring . . . or more in the nature of an isolated work
> assignment or employment decision?  The third factor, perhaps of

> most importance, is degree of permanence.  Does the act have the
> degree of permanence which should trigger an employee's
> awareness and duty to assert his or her rights[?]"

*Riedinger v. D'Amicantino*, 974 F. Supp. 322, 326 (S.D.N.Y. 1997) (quoting *Berry v. Bd. of Supervisors*, 715 F.2d 971, 981 (5th Cir. 1983)).  "To file a timely hostile work environment claim, a plaintiff need only show that one of the contributing acts occurred within the statute of limitations." *Karam v. Cnty. of Rensselaer*, No. 1:13-CV-01018, 2016 WL 51252, *4 (N.D.N.Y. Jan. 4, 2016) (citing *Cornwell v. Robinson*, 23 F.3d 694, 703-04 (2d Cir. 1994)).

### 3. Application

Plaintiff brings two claims under Title VII, one for discrimination and the other for retaliation.  *See* Dkt. No. 17 at ¶¶ 179-87.  The second amended complaint is not explicit as to what theory Plaintiff's Title VII discrimination claim is brought under; however, in her brief in opposition to Defendants' motion, Plaintiff relies on the theories of hostile work environment and constructive discharge.  Therefore, drawing all inferences in Plaintiff's favor, as the Court must, Plaintiff's Title VII discrimination claim can be construed to assert the theories of hostile work environment and constructive discharge.

Plaintiff alleges that Defendants subjected her to a gender-based hostile work environment because of her pregnancy, related medical conditions, and family care responsibilities.  *See* Dkt. No. 17 at 4.  This hostile work environment, Plaintiff claims, "commenced after she became pregnant in October 2020, culminating in her constructive discharge in March 2022."  Dkt. No. 22 at 23.  Plaintiff contends that the acts which occurred more than 300 days prior to her EEOC complaint are not time barred because "they are premised on allegations regarding a continuous and uninterrupted hostile work environment[.]"  *Id.* at 24.

Considering Plaintiff's allegations as a whole, the Court finds that Plaintiff has proffered sufficient facts to support a viable hostile work environment claim. Read in the light most favorable to Plaintiff, the second amended complaint suggests a workplace permeated with unchecked gender-based hostility that could objectively and subjectively have been perceived as hostile to her.

Plaintiff's allegations of discrimination and retaliation are supported by, *inter alia*, the following general factual allegations: (1) Defendant Gonzales became Plaintiff's direct supervisor in August 2020; (2) Plaintiff became pregnant in October 2020; (3) in December 2020, Plaintiff was promoted to Program Administrator 3 and, as a result, was placed on probation; (4) Defendant Gonzales began to create a hostile work environment by (i) denying Plaintiff's requests to use flex time, (ii) threating not to allow Plaintiff to take an afternoon off in the presence of other staff, (iii) harassing Plaintiff during non-work hours by calling her early in the morning and on weekends until she answered her cellphone, and (iv) going to Plaintiff's home to discuss non-urgent work matters outside of work hours; (5) Plaintiff took maternity leave on June 8, 2021, and planned to return to work in mid-September, 2021; (6) Defendant Gonzales continued to harass Plaintiff while she was out on maternity leave, by contacting her via text message and telephone regarding non-urgent work matters many times each week; (7) Defendant Gonzales asked Plaintiff to return early from maternity leave for a one-day assignment and indicated that if Plaintiff did not return early, her ability to transition from probation to a permanent employee would be at risk; (8) Plaintiff felt forced to return early and, upon her return to work, was informed that she was not assigned a one-day assignment and, instead, would be required to travel to New York City and the surrounding areas on a daily basis for many months; (9) Plaintiff worked sixty-one hours in excess of her regularly scheduled hours during the first two-weeks she

returned, a burden she was not physically or mentally prepared for; (10) another DHSES

employee, who was a better fit for the assignment given to Plaintiff and was out on non-

pregnancy related medical leave, was not asked to return early from his leave; (11) Defendant

Gonzales refused accommodations during the long-term New York City assignment that would

have helped Plaintiff, who was a new nursing mother, including (i) denying Plaintiff's request to

stay in a small rental home instead of a hotel room, despite the fact that the rental home was

cheaper and a DHSES employee who was not a nursing mother was given a similar

accommodation on a similar assignment, (ii) assigning Plaintiff to work locations where she was

unable to pump breast milk or was forced to pump in front of colleagues, and (iii) requiring

Plaintiff to make unnecessary travel to New York City, to perform tasks that could have been

done remotely; (12) DHSES did not provide adequate areas for employees to pump breast milk at

Building 7A, at 1220 Washington Avenue, Albany, NY 12226; (13) Defendant Gonzales used

Plaintiff's post-partum anxiety diagnosis as a reason to lower Plaintiff's performance rating; (14)

Defendant Gonzales extended Plaintiff's probationary period by the number of days that Plaintiff

took for maternity leave, even though she had the discretion not to do so; (15) Defendant

Gonzales refused to inform Plaintiff that she was on track to complete probation and failed to

inform Plaintiff that she successfully completed probation on February 25, 2022, the date that her

extended probation was supposed to end, or in the weeks that followed; and (16) as the result of

these and other acts, Plaintiff was constructively discharged on March 16, 2022.  *See, generally*,

Dkt. No. 17.

Many of these alleged events occurred prior to October 19, 2021.  However, drawing all

reasonable inferences in Plaintiff's favor, these acts could be considered part of a single,

continuing policy of discrimination against Plaintiff.  *See Davis-Garett v. Urb. Outfitters, Inc.*,

921 F.3d 30, 42 (2d Cir. 2019) ("'[A] charge alleging a hostile work environment claim . . . will

not be time barred so long as all acts which constitute the claim are part of the same unlawful

employment practice *and at least one act falls within the time period*'") (quoting *Morgan.*, 536

U.S. at 113-14) (emphasis in original).  Because some of the allegedly discriminatory conduct

occurred after October 19, 2021, all the discriminatory acts alleged may be considered timely for

the purpose of Plaintiff's state law and Title VII hostile work environment claims.  *See Sotomayor

v. City of New York*, 862 F. Supp. 2d 226, 251 (E.D.N.Y. 2012) (declining to grant plaintiff

summary judgment on hostile work environment claim but holding that "all of the discriminatory

acts alleged may be considered timely for the purpose of plaintiff's [ ] hostile work environment

claim" because "some of the allegedly discriminatory conduct occurred" during the limitations

period); *see also Mwantuali*, 2024 WL 1219752, at *11 (denying motion to dismiss Title VII and

HRL hostile work environment claims as untimely because some of the alleged discriminatory

acts were timely).

       And, to the extent Plaintiff brings a constructive discharge claim, such claim is timely as it

accrued on March 16, 2022.  *See Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000)

(a constructive discharge claim accrues on "the date when [the employee] gave definite notice of

her intention to retire").

       Accordingly, Defendants' motion is denied with respect to their argument that Plaintiff's

Title VII discrimination claim is untimely.[11]

**G.**      **Section 1983 Discrimination**

---

[11]  The Court does not reach a substantive analysis of Plaintiff's Title VII discrimination claim, as
Defendants do argue that this claim must be dismissed on the merits.

Defendants contend that Plaintiff cannot establish Defendant Gonzales' personal involvement for the purpose of a § 1983 discrimination claim "to the extent such claim is premised upon an alleged unavailability of pumping areas," because Defendant Gonzales did not know pumping areas were unavailable and had no authority to provide such accommodations. Dkt. No. 18-1 at 28. In response, Plaintiff argues that she has alleged Defendant Gonzales' personal involvement because the second amended complaint states that upon Plaintiff's return from maternity leave Defendant Gonzales "consistently assigned" Plaintiff to work assignments that interfered with Plaintiff's ability to pump breast milk. Dkt. No. 22 at 26-30.

"To state a valid claim under [§ 1983], the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Section 1983 does not create any independent substantive right, but rather "provides a civil claim for damages" to "redress . . . the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citations omitted).

Where, as in the present matter, color of state law is undisputed, "[§] 1983 employment discrimination claims asserted as equal protection violations are evaluated under the same standards as Title VII claims." *Chick v. Cnty. of Suffolk*, 546 Fed. Appx. 58, 59 (2d Cir. 2013). To adequately plead a Title VII discrimination claim, a plaintiff must "'establish a *prima facie* case of . . . discrimination by demonstrating that (1) [s]he was within the protected class; (2) [s]he was qualified for the position; (3) [s]he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'"

*Farooq v. City of New York*, No. 20-3185, 2022 WL 793117, *2 (2d Cir. Mar. 16, 2022) (quoting

*Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019)).  "'The facts required . . . to be alleged

in the complaint need not give plausible support to the ultimate question of whether the adverse

employment action was attributable to discrimination.  They need only give plausible support to a

minimal inference of discriminatory motivation.'"  *Id.* (quoting *Littlejohn*, 795 F.3d at 311).

Defendants do not assert that Plaintiff has failed to plead a *prima facie* case of

discrimination against Defendant Gonzales; instead, they limit their argument to whether the

second amended complaint adequately alleges Defendant Gonzales' personal involvement.  *See*

Dkt. No. 18-1 at 28.[12]

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  As the Second

Circuit has held, "after *Iqbal*, there is no special rule for supervisory liability.  Instead, a plaintiff

must plead and prove 'that each Government-official defendant, through the official's own

individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d

Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

The Court finds that Plaintiff has adequately alleged Defendant Gonzales' personal

involvement.  As discussed, Plaintiff's discrimination claims are premised on the theories of

hostile work environment and constructive discharge.  It makes no difference, at this stage,

whether Defendant Gonzales had control over pumping accommodations themselves; Plaintiff

alleges that Defendant Gonzales discriminated against her by, *inter alia*, creating a hostile work

---

[12]  Defendants add a proximate cause argument in their reply brief, *see* Dkt. No. 27 at 22, but, as
previously discussed, the Court will not consider arguments raised for the first time in Defendants'
reply papers.  *See Adecco USA, Inc.*, 2022 WL 16571380, at *5.

environment because of Plaintiff's gender when Defendant Gonzales denied accommodations, such as a small rental house or less frequent travel, which would have allowed Plaintiff to pump breastmilk or nurse her newborn. *See* Dkt. No. 17 at ¶¶ 81-147. The second amended complaint clearly alleges that Defendant Gonzales was the person who insisted that Plaintiff return from maternity leave early, denied accommodations that would have allowed Plaintiff to nurse her infant or pump, and continued to require unnecessary travel, even after Plaintiff communicated that she was facing difficulties during the New York City assignment. *See id.* Indeed, Defendant Gonzales was allegedly "dismissive" of Plaintiff's complaints, telling Plaintiff "I [pumped] in my car and didn't make such a big deal!" *Id.* at ¶ 112. Drawing all reasonable inferences in Plaintiff's favor, these allegations sufficiently state Defendant Gonzales' personal involvement in the alleged discrimination.

**H.    HRL Discrimination**

Defendants do not argue that the HRL discrimination claim against Defendant Gonzales must be dismiss on the merits in their initial motion papers. *See, generally*, Dkt. No. 18-1. And, as the Court has noted, Defendants belated arguments on this issue, made for the first time in Defendants' reply papers, *see* Dkt. No. 27 at 25-26, have not been considered, *see Adecco USA, Inc.*, 2022 WL 16571380, at *5. However, for the avoidance of doubt, to the extent such argument is properly raised, the Court finds that Plaintiff has stated an HRL discrimination claim against Defendant Gonzales.

Plaintiff's HRL discrimination claim is brought pursuant to Section 296(6) of the Human Rights Law, which makes it "unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6); *see* Dkt. No. 17 at ¶ 203.

There has been no apparent resolution of whether an individual may be held liable for aiding and abetting their own conduct by the New York State courts, "[but] this Court is bound by the Second Circuit's holding in *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), which recognizes a cause of action against individual employee perpetrators under Section 296(6) of the Human Rights Law." *Lee*, 751 F. Supp. 3d at 290. Thus, "[a]n individual can be liable under Section 296(6) so long as [s]he 'actually participates in the conduct giving rise to a discrimination claim.'" *Edwards v. Jericho Union Free Sch. Dist.*, 904 F. Supp. 2d 294, 304 (E.D.N.Y. 2012) (quoting *Tomka*, 66 F.3d at 1317, *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)).

"[O]n August 19, 2019, the New York legislature amended the HRL, bringing the standard for claims under the HRL closer to that of the NYCHRL for claims that accrued on or after the amendments' effective date of October 11, 2019." *Lee*, 751 F. Supp. 3d at 275 (citation omitted). To state an HRL claim that accrues after October 11, 2019, "a plaintiff must allege only that the plaintiff was 'treated "less well"' . . . because of a discriminatory intent,' *i.e.*, that the unequal treatment was based, at least in part, on a protected characteristic." *Id.* (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)). "[T]he challenged conduct need not even be 'tangible' (like hiring or firing)," *Mihalik*, 715 F.3d at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 79 (1st Dep't 2009)), and the discriminatory motive need only be "one of the motivating factors" for the unlawful discrimination, rather than the "sole motivating factor," *Watson v. Emblem Health Servs.*, 158 A.D.3d 179, 182-83 (1st Dep't 2018) (citation omitted). "In applying this lenient standard, the Court must consider the totality of the circumstances." *Lee*, 751 F. Supp. 3d at 275 (citing *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 245 (E.D.N.Y. 2015)).

The second amended complaint states that Plaintiff was treated less well than other employees who were not pregnant and/or nursing women. Plaintiff alleges that Defendant Gonzales required Plaintiff to return early from maternity leave to handle the Hurricane Ida assignment, even though another DHSES employee, who was a male, was not asked to return early from medical leave, despite the fact that the male employee was "a better fit for the assignment." Dkt. No. 17 at ¶¶ 78-79. Additionally, Plaintiff alleges she was denied accommodations during the Hurricane Ida assignment, despite the fact that a DHSES contractor was provided similar accommodations previously. *See id.* at ¶ 92. This contractor was not a new mother during that time period and "was permitted to have her boyfriend stay in the apartment paid by DHSES with her." *Id.* at ¶ 93. Thus, the second amended complaint states a plausible HRL discrimination claim against Defendant Gonzales under HRL § 296(6).

## I.    Retaliation Claims

Defendants argue that Plaintiff has failed to adequately allege a retaliation claim under Title VII, the HRL, or § 1983. *See* Dkt. No. 18-1 at 23-26, 29, 35-36. Plaintiff's Title VII retaliation claim is brought against DHSES (as the State is dismissed), and her HRL and § 1983 retaliation claims are brought against Defendants Bray and Gonzales (as the HRL claim is dismissed as against the State and DHSES).

### 1. Title VII Retaliation

As for her Title VII retaliation claim against DHSES, Defendants contend that Plaintiff's complaints to Defendant Gonzales about the lack of accommodations she received upon her return from maternity leave were too vague and generalized to constitute protected activity. *See id.* at 23-25. Additionally, Defendants argue that Plaintiff has not alleged any retaliatory action that followed Plaintiff's complaint to Defendant Bray. *See id.* at 26. Plaintiff contends that she

has adequately alleged that she engaged in protected activity when she requested accommodations to be able to nurse her infant during the two-month assignment in and near New York City, such as less travel or the rental of a small home instead of a hotel room.  *See* Dkt. No. 22 at 30-41. Further, Plaintiff argues that her email to Defendant Bray on March 16, 2022, detailing Defendant Gonzales' allegedly discriminatory treatment, was protected activity and that, as a result of Defendant Bray's failure to respond, Plaintiff was constructively discharged.  *See id.*

"Title VII forbids an employer to retaliate against an employee for . . . complaining of employment discrimination prohibited by Title VII[.]"  *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006).  Retaliation claims under Title VII, the HRL, and § 1983 are generally subject to the same standard.  *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 459 (S.D.N.Y. 2023); *Goonewardena v. N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 343-44 (S.D.N.Y. 2017) (treating retaliation claims under Title VII, the HRL, and § 1983 under the same standard); *see also Vega*, 801 F.3d at 91 ("[W]e hold that for a retaliation claim under § 1983 to survive a . . .  motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination").

"To establish a *prima facie* case of retaliation, the plaintiff must show that: '(1) [s]he was engaged in an activity protected under Title VII; (2) [her] employer was aware of his participation in the protected activity; (3) the employer took adverse action against [her]; and (4) a causal connection existed between the protected activity and the adverse action.'"  *Kirkland-Hudson*, 665 F. Supp. 3d at 459  (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 850 (2d Cir. 2013) (Barrington, J., concurring in part)).  Accordingly, for a retaliation claim to survive a motion to

dismiss, a "plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 89-90 (quoting 42 U.S.C. § 2000e-3(a)).

### i. Protected Activity

Turning to Defendants' first argument regarding the Title VII retaliation claim, *see* Dkt. No. 18-1 at 24-25, the Court disagrees with Defendants' position that Plaintiff's complaints to Defendant Gonzales did not constitute protected activity.

Under Title VII, protected activity can include requests for reasonable accommodations, such as pregnancy-related accommodations. *See Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 331-32 (S.D.N.Y. 2020) (explaining, in connection with assessing the plaintiff's Title VII and NYSHRL retaliation claims, that protected activity "may [ ] include requests for reasonable accommodation" and concluding that the plaintiff's alleged accommodation request, which related to her pregnancy, amounted to protected activity). "For a plaintiff's complaint or request to constitute protected activity, the plaintiff is required 'to have had a *good faith, reasonable belief* that [s]he was opposing an employment practice made unlawful by Title VII.'" *Id.* at 331 (quotation omitted).

Here, Plaintiff's allegations that she requested pregnancy-related accommodations upon her early return from maternity leave are sufficient to allege protected activity. *See* Dkt. No. 17 at ¶¶ 81-121  And, as noted, Defendants do not contest that Plaintiff's email complaint to Defendant Bray on March 16, 2022, which included a "detailed" account of the "discriminatory mistreatment she had been subjected to by [Defendant] Gonzales before and after her maternity leave in 2021," "the retaliation she was subjected to after she refused the two-month assignment to New York City because of a lack of accommodation so that she could continue nursing her newborn," and

that "she had still not received a final report indicating in writing that she had completed probation," Dkt. No. 17 at ¶¶ 161-62, was protected activity. *See* Dkt. No. 18-1 at 26. Drawing all reasonable inferences in Plaintiff's favor, the second amended complaint sufficiently alleges that Plaintiff engaged in protected activity under Title VII.

### ii. Adverse Action

Plaintiff alleges four colorable adverse actions for purposes of her retaliation claims: (1) her constructive termination on March 16, 2022; (2) the extension of her probationary period in December 2021; (3) Defendant Gonzales' lowering of Plaintiff's performance rating; and (4) Defendant Gonzales' withholding of written confirmation that Plaintiff had passed probation in February and March 2022.[13] The Court finds that these allegations are sufficient to support a claim for Title VII retaliation against DHSES.

For a Title VII retaliation claim, "the standard for adverse employment action [is] a materially adverse change in the terms, privileges, duration and conditions of employment." *Tregliav. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002). "The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington*, 548 U.S. at 57); *see Hicks v. Baines*, 593 F.3d 159, 162 (2d Cir. 2010). As the Second Circuit described in *Hicks v. Baines*, the Supreme Court recognizes that "Title VII's anti-discrimination and anti-retaliation provisions 'are not coterminous'; anti-retaliation protection is broader and 'extends beyond workplace-related or employment-related retaliatory acts and harm.'" *Hicks*, 593 F.3d at 165 (quoting *Burlington*, 548

---

[13] Plaintiff does not specify exactly when Defendant Gonzales issued her performance review, but the second amended complaint states that Plaintiff's probation was extended in December 2021. *See* Dkt. No. 17 at ¶ 132.

U.S. at 67). "Thus '[t]he scope of actions that may be materially adverse is . . . broader for purposes of retaliation claims than for discrimination claims.'" *McCullough v. John T. Mather Hosp. of Port Jefferson, N.Y., Inc.*, No. 16-CV-4968, 2019 WL 1755436, *9 (E.D.N.Y. Apr. 19, 2019) (quoting *Pape v. Dircksen & Talleyrand, Inc.*, 2019 WL 1441125, *8 (E.D.N.Y. Mar. 31, 2019)).

Although Title VII "'does not set forth "a general civility code for the American workplace,"'" *Hicks*, 593 F.3d at 165 (quoting *Burlington*, 548 U.S. at 68-69), "the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable," *Id.* (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)). Indeed, "'[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication *virtually always* constitutes the employee's *opposition* to the activity.'" *Littlejohn*, 795 F.3d at 317 (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)) (emphasis in original).

As to this element of the claim, Defendants argue that Defendant Gonzales' extension of Plaintiff's probation, diminished performance review rating, and failure to issue a final probationary report do not constitute adverse actions. *See* Dkt. No. 27 at 13-14. The Court disagrees.

"'Reprimands or negative evaluation letters may, in some circumstances, constitute adverse employment action.'" *Trachtenberg v. Dep't of Educ. of City of N.Y.*, 937 F. Supp. 2d 460, 469 (S.D.N.Y. 2013) (quoting *Lawrence v. Mehlman,* 389 Fed. Appx. 54, 56 (2d Cir. 2010)). "'[A] negative performance review can constitute an adverse action for purposes of a retaliation claim[.]'" *McCullough*, 2019 WL 1755436, at *9-10 (quoting *Cerni v. J.P. Morgan Secs. LLC,*

44

208 F. Supp. 3d 533, 539 (S.D.N.Y. 2016)) (granting summary judgment because defendants articulated a legitimate non-retaliatory reason, but finding extension of probation period and negative performance review to be sufficient to establish the *prima facie* element of adverse employment action).

Plaintiff alleges that Defendant Gonzales' negative evaluation, Plaintiff's post-partum anxiety diagnosis, and Plaintiff's exercise of maternity leave were used to justify an unnecessary or illegal extension of her probation.  *See* Dkt. No. 17 at ¶¶ 122-47.  At this stage, these allegations meet Plaintiff's burden of pleading an adverse action for purposes of Title VII retaliation claim.

Additionally, constructive discharge is recognized as an adverse action in the context of a retaliation claim.  *See Luzunaris v. Baly Cleaning Servs.*, No. 23-CV-11137, 2024 WL 3926708, *21 (S.D.N.Y. July 29, 2024).  Thus, regardless of whether the constructive discharge is attributable to either Defendant Gonzales' or Defendant Bray's conduct, or both, these allegations are sufficient for purposes of pleading an adverse action against DHSES.

### iii. Causation

A plaintiff may plead that an adverse work event was caused by the protected activity either "'(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'"  *Galimore v. City Univ. of N.Y. Bronx Comm. Coll.*, 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).  "While the Second Circuit has articulated no 'bright line' rule for when an alleged retaliatory action occurs too far in time from the exercise of a federal right to

be considered causally connected, it is well settled that when 'mere temporal proximity' is offered to demonstrate causation, the protected activity and the adverse action must occur 'very close' together." *Id.* (internal citations omitted); *see Sareen v. Port Auth. of N.Y. & N.J.*, No. 12-CV-2823, 2013 WL 6588435, *14 (S.D.N.Y. Dec. 16, 2013) (collecting cases).

Here, Plaintiff alleges that Defendant Gonzales "targeted Plaintiff and subjected her to retaliation in the form of additional discriminatory mistreatment in an effort to drive Plaintiff out of her job at DHSES." Dkt. No. 17 at ¶ 95. According to the second amended complaint, two months after Plaintiff complained about the denials of accommodations, Defendant Gonzales retaliated against her for engaging in this protected activity by extending her probation and lowering Plaintiff's performance review because of Plaintiff's post-partum anxiety. *See id.* at ¶¶ 122-32. Plaintiff's extended probation was scheduled to end on February 25, 2022, but Defendant Gonzales failed to issue a written confirmation and ignored Plaintiff's requests for information about her probation end date and employment status. *See id.* at ¶¶ 150-58. Weeks after February 25, 2022, Plaintiff still had "received no written notice from anyone at DHSES that she had passed probation and was deemed to be a permanent employee of the agency and would not be fired." *Id.* at ¶ 158. Fearing imminent termination based on this series of conduct, Plaintiff sought other employment and was constructively discharged on March 16, 2022. *See* Dkt. No. 17 at ¶¶ 159-164.

This timeline, which occurred over the course of a few months, is sufficient to support an inference that Defendant Gonzales' adverse actions were because of the protected activity Plaintiff engaged in. *See Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 364 (S.D.N.Y.

2012) ("'[F]ive months is not too long to find the causal relationship'") (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)).[14]

For these reasons, the Court finds Plaintiff has adequately alleged a Title VII retaliation claim against DHSES.

### 2. HRL Retaliation

#### i. Defendant Gonzales

Defendants argue that the HRL retaliation claim against Defendant Gonzales should be dismissed for the same reasons as the Title VII claim against DHSES. *See* Dkt. No. 18-1 at 36. As the motion to dismiss is denied as to the Title VII retaliation claim, the HRL retaliation survives for the same reasons, but one distinction must be addressed: the standard for what constitutes protected activity under the HRL is similar but not identical to Title VII.

Although courts in this circuit have recognized that, under the HRL, a request for a reasonable accommodation is not protected activity for the purposes of a retaliation claim, "'courts have distinguished between requests for accommodation in the first instance, which do not constitute protected activity, and *complaints about or opposition to the denial of such requests*, which may constitute protected activity.'" *Medina v. AAM 15 Mgmt. LLC*, 750 F. Supp. 3d 332, 347 (S.D.N.Y. 2024) (quotation and alteration omitted) (emphasis in original). This distinction is material in cases where a plaintiff's HRL retaliation claim hinges merely on allegations that the plaintiff requested accommodations and did not subsequently complain about the denial of such

---

[14] Additionally, although Plaintiff has not raised the argument in response to the present motion, the Court notes that to the extent Plaintiff alleges Defendant Gonzales assigned her an excessive workload, such allegations could support an inference of retaliation. *See Vega*, 801 F.3d at 88 ("[T]he assignment of 'an excessive workload' as a result of 'discriminatory intent,' . . . can be an adverse employment action because it is 'more disruptive than a mere inconvenience or an alteration of job responsibilities'") (internal citations omitted).

accommodations. *See id.* at 345-51 (discussing the divergence between Title VII and the HRL regarding whether a request for a reasonable accommodation, in the first instance, is protected activity for purposes of retaliation claims).

Here, however, the distinction is of no consequence because Plaintiff alleges she engaged in protected activity, not just by requesting accommodations, but by complaining about Defendant Gonzales' denial of those requested accommodations. For example, after Defendant Gonzales denied Plaintiff's requests for accommodations during her extended New York City assignment, Plaintiff "informed Gonzales that day she did not have a place to pump other than a bathroom, a communication that Gonzales ignored." Dkt. No. 17 at ¶ 99. And, even before that, Plaintiff allegedly complained to Defendant Gonzales that, because Plaintiff was denied the accommodation of a small rental house, she would not be able to nurse her newborn during the assignment. *See id.* at ¶ 95. In response to Plaintiff's complaints regarding how the lack of accommodations made it difficult to meet the travel requirements and tend to her responsibilities as a new mother, including pumping breast milk, Defendant Gonzales alleged stated "I did it in my car and didn't make it such a big deal!" *Id.* at ¶ 112.

Therefore, for the reasons articulated above regarding the Title VII retaliation claim, and this additional explanation, the motion to dismiss is denied as to the HRL retaliation claim against Defendant Gonzales.

### ii. Defendant Bray

Defendants argue that Plaintiff fails to set forth allegations that Defendant Bray "took any negative action against Plaintiff whatsoever after receiving her complaint, other [than] delaying a response for approximately two weeks." Dkt. No. 18-1 at 35-36. In response, Plaintiff argues that, because Defendant Bray failed to timely address Plaintiff's email containing a detailed

account of the discrimination she suffered, Plaintiff feared her termination was imminent, causing

Plaintiff's constructive discharge on March 16, 2022. *See* Dkt. No. 22 at 33-34.

As with HRL discrimination claims, HRL retaliation claims that accrue after October 11,

2019, are also subject to the more lenient standards of the NYCHRL. *See Lee*, 751 F. Supp. 3d at

284. Thus, "the plaintiff must show that she took an action opposing her employer's

discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to

deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (internal citations

omitted). "As to the causation element, the NYCHRL only requires that the protected activity be

a 'motivating factor' in the adverse action, and not its 'but-for' cause, as would be required under

federal law." *Lee*, 751 F. Supp. 3d at 284 (quoting *Mihalik*, 715 F.3d at 112).

Both the NYSHRL and the NYCHRL prohibit "aid[ing], abet[ting], incit[ing],

compel[ling] or coerc[ing] the doing" of any unlawful acts of discrimination under either title,

including sexual harassment and retaliation. N.Y. Exec. Law § 296(6); N.Y.C Admin. Code § 8-

107(6). The same standard governs aiding and abetting claims under the NYSHRL and

NYCHRL "because the language of the two laws is 'virtually identical.'" *Feingold v. New York*,

366 F.3d 138, 158 (2d Cir. 2004) (quotation omitted). To state a claim for aiding and abetting

unlawful harassment, discrimination, or retaliation, a plaintiff must plead that the defendant

"actually participate[d]" in the unlawful conduct. *Farmer*, 473 F. Supp. 3d at 337 (quotation and

internal quotation marks omitted). Further, aiding and abetting "liability requires that the aider

and abettor share the intent or purpose of the principal actor." *Fried v. LVI Servs., Inc.*, No. 10-

CV-9308, 2011 WL 2119748,*8 (S.D.N.Y. May 23, 2011) (quotation and internal quotations

marks omitted). "'A supervisor's "failure to take adequate remedial measures" in response to a

complaint of discrimination' can, with proper factual allegations, constitute actual participation."

*McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting *Parra v. City of White Plains*, 48 F. Supp. 3d 542, 555 (S.D.N.Y. 2014)); *see Russo v. Tuttnauer USA Co. Ltd.*, No. 21-CV-1720, 2025 WL 1604063, *5 (E.D.N.Y. June 6, 2025) ("A plaintiff may establish individual liability by showing that a defendant failed to take remedial action in response to reports of discriminatory behavior or observation of discriminatory behavior") (citing *Lee*, 751 F. Supp. 3d at 290).

There is no dispute, at this stage, that Plaintiff opposed discrimination when she sent the email to Defendant Bray on March 16, 2022. *See Gallo v. Wonderly Co.*, No. 1:12-CV-1868, 2014 WL 36628, *9 (N.D.N.Y. Jan. 6, 2014) ("An informal objection to unlawful discrimination to a management team constitutes a protected activity"). However, the second amended complaint does not concretely plead a failure by Defendant Bray to take adequate remedial measures in response to the email. The only action that Defendant Bray allegedly engaged in was not immediately responding to Plaintiff's email on the same day that Plaintiff resigned. *See* Dkt. No. 17 at ¶ 163. Indeed, Plaintiff actually alleges that Defendant Bray *did* take remedial action; in her response, sent two weeks later, Defendant Bray expressed that, after receiving Plaintiff's email, she "immediately referred" Plaintiff's complaint "to the appropriate agency for investigation." *Id.* at ¶ 165. It is not plausible that a supervisor referring an employee's complaint for investigation is likely to deter that employee from opposing discriminatory actions.

Accordingly, Plaintiff has failed to plead a plausible adverse action to support a retaliation claim against Defendant Bray.

### 3. Section 1983 Retaliation

"[P]ublic employees aggrieved by discrimination in the terms of their employment may bring suit under [§ 1983] against any responsible persons acting under color of state law." *Vega*,

801 F.3d at 87 (citation omitted). "When a supervisor retaliates against an employee because [s]he complained of discrimination, the retaliation constitutes intentional discrimination against h[er] for purposes of the Equal Protection Clause." *Id.* at 82. Thus, "a state employee may bring a retaliation claim under § 1983 against a supervisor who, acting under color of law, retaliates against h[er] for opposing discrimination in the terms of h[er] employment." *Id.*

"[F]or a retaliation claim under § 1983 to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against h[er], (3) because [s]he complained of or otherwise opposed discrimination." *Id.* at 91. However, "[a]n individual cannot be held liable for damages under § 1983 'merely because [s]he held a high position of authority,' but can be held liable if [s]he was personally involved in the alleged deprivation." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (citing *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)). "'[B]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 676).

Personal involvement for a § 1983 claim can be established by showing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

51

*Littlejohn*, 795 F.3d at 314 (2d Cir. 2015) (quoting *Back*, 365 F.3d at 127). In addition to fulfilling one of these requirements, "a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation . . . [and] that [the] supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic. . . ." *Raspardo,* 770 F.3d at 116 (citation omitted).

It is undisputed that Defendants acted under the color of state law. And, because the remaining factors of a § 1983 retaliation claim are identical to those under Title VII and the HRL, Plaintiff has plausibly alleged that Defendant Gonzales retaliated against her in violation of the Equal Protection Clause. And, as for Defendant Bray, for the same reasons Plaintiff's HRL retaliation claim fails, the second amended complaint does not plausibly allege that Defendant Bray took any adverse action against Plaintiff.

Additionally, even if Plaintiff had pled that Defendant Bray took an adverse action, Plaintiff has failed to allege her personal involvement for purposes of a § 1983 retaliation claim. Plaintiff alleges that Defendant Bray "retaliated against Plaintiff after [Plaintiff] complained about [Defendant] Gonzales' discriminatory and retaliatory mistreatment by condoning [Defendant] Gonzales' misconduct, which culminated in Plaintiff's constructive discharge, and by failing to remedy the illegal conduct." Dkt. No. 17 at ¶ 194. Plaintiff also alleges that "[Defendant] Bray was grossly negligent in supervising Gonzales." *Id.* However, there are no allegations that Defendant Bray actually participated in the alleged retaliation. And, Plaintiff's bare legal conclusion that Defendant Bray was "grossly negligent" is unsupported by any allegations regarding Defendant Bray's supervision of Defendant Gonzales. *See Iqbal*, 556 U.S. at 678. Defendant Bray cannot be held liable for Defendant Gonzales' retaliation merely by virtue of her

supervisory position. *See Tangreti*, 983 F.3d at 618-20. Thus, the pleading is devoid of allegations that Defendant Bray, through her own conduct, violated the Constitution.

Accordingly, the § 1983 retaliation claim survives as against Defendant Gonzales, but must be dismissed as against Defendant Bray.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 18) is **GRANTED in part and DENIED in part** as follows:

> **GRANTED** insofar as: (1) Plaintiff's HRL claims against the State of New York and DHSES are **DISMISSED with prejudice**; (2) Plaintiff's request for punitive damages for her HRL claims is **DISMISSED with prejudice**; (3) Plaintiff's requests for declaratory judgment and injunctive relief are **DISMISSED without prejudice**; (4) Plaintiff's Title VII claims against the State of New York are **DISMISSED without prejudice**; (5) Plaintiff's HRL and § 1983 retaliation claims, as against Defendant Bray, are dismissed **without prejudice**; and
>
> **DENIED** in all other respects; and the Court further

**ORDERS** that the following claims remain at this stage: (1) discrimination in violation of Title VII against Defendant DHSES; (2) retaliation in violation of Title VII against Defendant DHSES; (3) discrimination in violation of the Equal Protection Clause, pursuant to § 1983, against Defendant Gonzales; (4) retaliation in violation of the Equal Protection Clause, pursuant to § 1983, against Defendant Gonzales; (5) discrimination in violation of the HRL against

Defendant Gonzales; and (6) retaliation in violation of the HRL against Defendant Gonzales; and the Court further

ORDERS that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 28, 2025
          Albany, New York

Mae A. D'Agostino
U.S. District Judge